ROBIN AKINS, Respondent-Appellant, v GLENS FALLS CITY SCHOOL DISTRICT, Appellant-Respondent.

Third Department, June 26, 1980

## APPEARANCES OF COUNSEL

*La Pann, Reardon, FitzGerald & Firth (Peter D. FitzGerald* of counsel), for appellant-respondent.

*Ingalls & Mathias* and *Caffry, Pontiff, Stewart, Rhodes & Judge (Robert S. Stewart* of counsel), for respondent-appellant.

*McGivern, Shaw & O'Connor,* for New York State Public High School Athletic Association, Inc., *amicus curiae.*

## OPINION OF THE COURT

KANE, J.

In April of 1976 plaintiff, a spectator at a high school baseball game, was struck in the eye by a foul ball as she stood behind a fence along the third base line. Approximately three feet high, both base line fences were parallel to and about 60 feet distant from the first and third base lines. They extended from a backstop some 24 feet high and 50 feet wide that was located behind home plate in front of bleacher seating. The jury assessed her damages in the sum of $100,000 and apportioned fault at 65% to defendant and 35% to plaintiff in accordance with instructions of the trial court under the rule of comparative negligence (CPLR 1411). The court refused to separately charge that plaintiff assumed the risks attending her status as a spectator, and charged the jury that the duty owed by defendant as the owner of the premises was one of reasonable care *(Basso v Miller,* 40 NY2d 233).

When the Legislature adopted a doctrine of pure comparative negligence, it explicitly melded contributory negligence and assumption of risk into the term "culpable conduct" and determined that such conduct was to be considered in measuring the amount of diminution of any damages a plaintiff might otherwise be entitled to recover (CPLR 1411). However, while the statute undoubtedly eliminated assumption of risk as a complete defense to the same extent that a plaintiff's own negligence was discarded as an absolute barrier to recovery, the doctrine may still possess some of its former vitality in the strict sense of negating a defendant's duty (cf. *Baker v Topping,* 15 AD2d 193; *McEvoy v City of New York,* 266 App Div 445, affd 292 NY 654). In applying a standard of comparative negligence, most jurisdictions have continued to recognize, for example, that a contractual or express assumption of risk will relieve a defendant of responsibility to the plaintiff (see *Li v Yellow Cab Co. of Cal.,* 13 Cal 3d 804; Ann. 78 ALR3d 339, 379-386). The circumstances here plainly do not fit into such a limited category, for plaintiff's conduct did not unquestionably manifest an intent to free defendant from all obligation to her. Accordingly, the trial court correctly refused to specifically charge assumption of risk by the plaintiff. Other issues raised on this appeal, involving the condition of the field and

comments made by plaintiff's counsel in summation, are not of such a nature as to cause us to disturb the verdict of the jury, which, on this record, was fair and reasonable.

The judgment should be affirmed, with costs.

HERLIHY, J. (concurring). I do not perceive any basis for a dismissal of the complaint upon the ground that as a *matter of law* the plaintiff's assumption of risk was a 100% equivalent of damages, and the dissenters suggest no solid basis whereby I can conclude that there was a failure by the plaintiff to prove facts sufficient to make a jury issue of negligence or lack of reasonable care.

We are concerned on this appeal with the purpose and meaning of CPLR 1411, enacted by the Legislature in 1975, which reads as follows: "In any action to recover damages for personal injury, injury to property, or wrongful death, the culpable conduct attributable to the claimant or to the decedent, including contributory negligence or assumption of risk, shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the claimant or decedent bears to the culpable conduct which caused the damages."

The key to the section is the word "damages" and connotes the adoption of comparative negligence in this State, which prior thereto in many cases had resulted in compromise verdicts by the jurors. The section further establishes a rule known as "culpable conduct", which specifically includes contributory negligence and assumption of risk. It in no way eliminates these basic principles, but includes them in the broader term.

The decisional law holdings in the cases such as *Ingersoll v Onondaga Hockey Club* (245 App Div 137) and *Baker v Topping* (15 AD2d 193) remain appropriate as a defense against liability for damages in personal liability, property damage and wrongful death actions. The distinction *now* applicable is that instead of having to establish a "complete" lack of culpable conduct, a plaintiff must only establish that the damages are something more than the proportion of his culpable conduct to the conduct of the defendant or defendants as the case may be. The defendant now cannot rely upon a complete release from damages simply by showing contributory negligence or assumption of risk (or other culpable conduct) on the part of the plaintiff. However, the defen-

dant still can completely avoid damages by proving that upon comparison the contributory negligence *or assumption of risk* proportionally reduces damages to zero.

In the case of *Micallef v Miehle Co., Div. of Miehle-Goss Dexter* (39 NY2d 376, 387, n 2) the court stated in a footnote: "Since the enactment of CPLR 1411-1413, no procedural distinctions between contributory negligence and assumption of risk now come to mind." In the present case we are not concerned with procedure, but with the substantive law applicable to a negligence action. It seems apparent that a defendant in a case with facts involving the principle of assumption of risk is still entitled to have the elements thereof charged to a jury as was the case before comparative negligence. The only difference is that the jury cannot be charged that assumption of risk, if they find it to have been assumed, is automatically a complete release of the defendant from damages *(Baker v Topping, supra,* p 196). The jury must now apply the risk assumed in proportion to the culpable conduct of the defendant.

This reasoning as applied to the present case justified the request of defendant for a charge of the rule of law of assumption of risk. In response to the request by defendant's counsel for such a charge (prior to the actual charge) the court responded: "I intend to discuss very generally that there are certain inherent risks in any spectator sport of this nature, but I am not going to get into the doctrine of assumption of risk and what it means." It is evident that the court recognized the continuing viability of the defense of contributory negligence as it distinctly charged that particular doctrine of law. There is no basis for not so charging as to assumption of risk. The charge as requested was of particular importance in what might be characterized as a spectator event where the risk is evident from the type of event and where the assumption of risk is not necessarily the equivalent of duty.

The fulcrum for my vote in this case is whether or not the charge of the court was sufficient to assure that the principles of assumption of risk were adequately a part of the consideration of the jury in reaching a verdict. From a reading of the charge in its entirety, the jury would have considered the obvious danger of being struck by a ball in determining what, if any, damages were caused by the conduct of the plaintiff and in what proportion. Such a conclusion is further buttressed by the request of the jury for further instructions as to

"compensation". Under such circumstances, if there was error, it was not so egregious as to require a new trial as to damages.

The judgment should be affirmed.

CASEY, J. (dissenting). We respectfully dissent. It is our opinion that the complaint should be dismissed for the plaintiff's failure to show any negligence whatever on the part of the defendant in the following factual pattern that is undisputed.

On April 14, 1976, the plaintiff, an 18-year-old girl, who had previously watched baseball games and who had played softball in her gym classes at school, attended a high school baseball game with her boyfriend, that was being played on a field or diamond owned and maintained by the defendant. When she arrived, the game was in progress. No admission was paid or charged. The field was well kept and maintained and free of debris. A chain link fence, three feet high, ran from each end of a 20-foot high backstop (that was 60 feet behind home plate) along the first and third base lines, about 60 feet back from each base line. Bleachers sufficient to accommodate about 120 people were located behind the backstop, and there is no proof that the plaintiff was prevented from sitting there or that these bleacher seats were filled. Spectators were standing along the spectators' side of the three-foot chain link fence, and the plaintiff and her boyfriend decided to view the game from a position behind the three-foot fence that ran along the third base line, about 10 to 15 feet from the backstop on its third base side. While standing in the place she had selected, a foul ball sharply hit by the bat of one of the players struck the plaintiff in the eye, causing her serious injury.

Having adequately screened the area of its ball park behind home plate, the defendant fulfilled its duty to the plaintiff and cannot be held in negligence when she herself selected a position that was outside the area screened. (See Ann. 91 ALR3d 24, 41, § 3 [c].) There has been no showing of any negligence on the defendant's part, as a matter of law (Donohue v Copiague Union Free School Dist., 64 AD2d 29, affd 47 NY2d 440), and the defendant's motion for a dismissal should have been granted (O'Bryan v O'Connor, 59 AD2d 219; Kozera v Town of Hamburg, 40 AD2d 934). The facts being undisputed, the complaint should now be dismissed, as a retrial cannot make factual that which is legally insufficient.

This dissent could be concluded here and now except for the reliance of the majority on the provisions of CPLR 1411 (eff Sept. 1, 1975). Concededly, this statute broadened the plaintiff's contributory negligence to culpable fault and included therein assumption of risk. Culpable fault was made comparative and the burden of proving it as an affirmative defense was placed upon the defendant, as the party asserting it, by CPLR 1412. Even if a consideration of CPLR 1411 and 1412 were necessary, the same conclusion of dismissal as a matter of law would result. When the plaintiff, with her prior knowledge of how the game was played, elected to view it from the place she herself had selected, her injury from a foul ball was just as reasonably foreseeable to her as it was to the defendant. Her prior knowledge of the danger and her consent to risk it resulted in her total assumption of the risk of injury, as a matter of law (*Dillard v Little League Baseball,* 55 AD2d 477). It matters not in these undisputed circumstances whether we call the plaintiff's culpable conduct assumption of risk or contributory negligence, for it was such as to completely and totally bar her recovery as a matter of law, even under the provisions of CPLR 1411 and 1412. If her conduct is denominated assumption of risk, then such conduct removed, as a matter of law, any duty of the defendant to protect her from the risks inherent in the game (*Bradshaw v Puduano,* 55 AD2d 828), and lacking such duty there would be no negligence on the defendant's part. (*Donohue v Copiague Union Free School Dist., supra.*) If her conduct be denominated, under the provisions of CPLR 1411, contributory negligence, then it was such as to totally preclude any recovery by her—total contributory negligence, as a matter of law. To hold otherwise would be tantamount to requiring every injury of every spectator of every sport to be submitted to the jury for its determination whether there be any negligence at all on the part of the defendant and regardless of the degree of culpable fault on the part of the plaintiff. Such result lacks a rational basis. As stated in *Basso v Miller* (40 NY2d 233, 242): "[T]he court, as it would in the usual negligence action, must make the threshold determination as to whether the plaintiff, by introducing adequate evidence on each element, has made out a case sufficient in law to support a favorable jury verdict. Only in those cases where there arises a real question as to the landowner's negligence should the jury be permitted to proceed. In all others, where proof of any essential element falls short, the case should go no further."

In our opinion, CPLR 1411 and 1412 do not apply because they are never reached where the plaintiff on her direct case has failed to prove some negligence on the defendant's part and nothing suggests to the contrary.

Therefore, the judgment in favor of plaintiff should be reversed, and the complaint dismissed.

MAHONEY, P. J., concurs with KANE, J.; HERLIHY, J., concurs in a separate opinion; STALEY, JR., and CASEY, JJ., dissent and vote to reverse in an opinion by CASEY, J.

Judgment affirmed, with costs.